IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
                            )
TAYLOR C. BROOKS,           )
                            )
                            )
         Plaintiff,         )
                            )
                            )   Civil Action No. 05-47
         v.                 )
                            )   Judge Gary L. Lancaster/
                            )   Magistrate Judge Sensenich
USX CORPORATION,            )
                            )
                            )
              Defendant.    )   Re:  Doc. # 18
                            )
                            )
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is recommended that Defendant's Motion for Summary Judgment be granted.


**II.  REPORT**

Taylor C. Brooks, ("Plaintiff"), brings this action against United States Steel Corporation ("Defendant")[1] alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (Complaint, Doc. # 1.) Specifically,

---

[1] The caption and the complaint incorrectly identify United States Steel Corporation as USX Corporation. (See Doc. # 1.) Defendant United States Steel Corporation acknowledges this error without objection. (Doc. # 18.)

Plaintiff claims that Defendant disciplined him but did not discipline similarly situated women for similar conduct.

A. **Factual Background**[2]

Plaintiff, an African American, was born a female named Anna Marie Brooks. In 1976, Plaintiff began employment with Defendant at the United States Steel Corporations' Edgar Thomson plant in Braddock, Pennsylvania as an 18 year-old female. Around the same time, Plaintiff decided to change his gender from female to male. In 1982, Plaintiff sought medical consultation with respect to changing from female to male (hereinafter "gender reassignment"), and underwent hormone therapy and psychological counseling in furtherance of this goal. In 1987, Plaintiff's name was legally changed to Taylor Clay Brooks. In 1997, Plaintiff underwent breast reduction surgery. In 1999, Plaintiff received a new birth certificate which identified him as a male named Taylor Clay Brooks. At the time of the most recent filings, Plaintiff's gender reassignment was not yet fully complete.

In 1995, Plaintiff began performing Tuyereman functions in the Blast Furnace Department at the plant. These duties are safety sensitive and consist of watching the water discharge on the blast furnace to check for obstructions; checking tuyeres for

_____

[2] The parties filed a joint statement of undisputed material facts from which these facts were taken, largely verbatim, unless another source is noted. (Doc. # 19.)

leaks; changing shafts that are used to tap the furnace to allow molten iron to flow; and monitoring the color of the flame in order to check for the presence of gas or water and checking the cooler for leaks. Defendant has a Discriminatory Harassment Policy, has trained its employees on the policy, and has distributed contacts on the policy. Plaintiff has received copies of the policy, attended training on the policies, and received contacts on the policy.

The discipline action which is the basis of this action resulted from the following incident for which Plaintiff received two four day suspensions, which were converted to discharges and then changed to one five day suspension without back pay. On February 22, 2002, Plaintiff was in the trestle shanty, one floor above his work area, making a personal telephone call. The telephone is primarily used by the trestle crew for work related calls. During the phone call, Trestle Group Leader Leon Hawes, an African American co-worker, entered the trestle shanty with another employee, Cori Anderson. There is a factual dispute about what transpired in the trestle office. According to Hawes, when he entered the trestle office, he told Plaintiff that he was not supposed to be using the telephone, that the trestle office was not his assigned work area, and that he was not supposed to be in there. Plaintiff then said to him "[g]ive a nigger a high paying job and it goes to their head." Plaintiff alleges that Hawes had

approached him from behind, stepped on the back of his heels, and then gyrated his pelvic area against Plaintiff's buttocks while he was talking on the phone. (Doc. # 22 at ex 1 ¶ 8.) There is no dispute that Plaintiff used the term "nigger" when he was referring to Hawes.

After this exchange, Hawes called Process Leader Jay Rosser to come to the trestle office. Process Leaders oversee the safety and operations of the department, supervise all bargaining unit employees, and report to the Senior Process Leader. Mr. Rosser asked Dean Rapacchietta, another Process Leader, to accompany him to the trestle office. When Rosser and Rapacchietta entered the trestle office, they found Plaintiff to be indignant, agitated and using a lot of offensive language. Plaintiff, Hawes, and Anderson each explained their versions of what had happened.

Rosser contacted Senior Process Leader Pete Yanief to advise him of the incident. He prepared a written report of the events at the request of Yanief. Rapacchietta reviewed the report for accuracy, agreed with its contents, and did not suggest any changes. There is a factual dispute as to whether Plaintiff told Rosser and Rapacchietta about the alleged actions of Hawes. Plaintiff alleges that he reported that Hawes had gyrated against him, and that Hawes was not disciplined for this conduct. (Doc. # 22, ex 1 ¶ 8.) The report written by Rosser and confirmed by Rapacchietta does not include any mention of this conduct by

4

Hawes. (Doc. # 22, ex. G.) (Although Plaintiff seems to complain that Hawes was not disciplined, Hawes is a man and therefore the failure to discipline him is not relevant to Plaintiff's Title VII claim that he was discriminated against because of his gender.) Plaintiff is still working for Defendant.

On February 23, 2002, Plaintiff called off from work until further notice. On February 26, 2002, he was issued a balance of turn plus four day discharge subject to suspension for harassing a fellow employee, and a balance of turn plus four day discharge for using abusive and profane language towards a fellow employee.

Plaintiff has been a member of United Steelworkers of America, Local 1219, while in the employ of Defendant. Under the collective bargaining agreement, an employee given a suspension subject to discharge must be given an opportunity to participate in a 8-B Hearing before he can be discharged. On March 1, 2002, Plaintiff's 8-B Hearing was held. At the hearing, Rosser's written report was read. Further, Ms. McEnheimer, the Staff Supervisor of Labor Relations, discussed Plaintiff's use of the term "nigger" toward Hawes, and Plaintiff admitted that he used the term against Hawes. Following the hearing, Yanief decided to convert both of Plaintiff's suspensions into discharges. On March 2, 2002, Plaintiff filed a grievance related to the discharges pursuant to the applicable procedures. On March 13, 2002, a Step 2 meeting was held with respect to Plaintiff's grievances.

Defendant denied Plaintiff's grievances, and Plaintiff appealed his grievance to Step 3 of the grievance procedure. Although Plaintiff wished to continue his appeal, representatives of his labor union and U.S. Steel agreed to reduce his discharge to a five day suspension without back pay. He did not enter into the agreement because he wished to continue the appeal to an arbitration hearing. He returned to work on November 11, 2002 and continues to work for U.S. Steel.

B. **The Parties' Allegations**

Plaintiff asserts that Defendant intentionally discriminated against him because of his sex in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000 e-2. (Docs. # 1 at ¶¶ 13-16, # 22 at 12-13.) Plaintiff identifies himself as a male who suffered sex based discrimination because non-class members (females) were not disciplined for comparable conduct. (Doc. # 1 at 2.) He argues that he has established a prima facie case for disparate treatment and he seeks to establish that the reason given for his termination was a pretext for discrimination. (Doc. # 22 at 12, 17.) Plaintiff does not allege any retaliation, hostile work environment, disparate impact, or quid pro quo harassment in his complaint. (See Doc. #

1.) He is alleging disparate treatment under Title VII.[3]

Defendant argues that Plaintiff was terminated for legitimate non-discriminatory reasons. (Defendant's Brief, Doc. # 20 at 19.) Defendant denies that any sexual harassment was reported, and asserts that its employees did not subject Plaintiff to verbal or physical conduct of a sexual nature.

### C.   Standard for Summary Judgment

---

[3] In his complaint, Plaintiff alleges that "Similarly situated female fellow employees have harassed Plaintiff and used abusive and profane language towards Plaintiff, but they did not have their employment suspended or terminated by Defendant." (Doc. # 1 at ¶ 13.) In his brief, Plaintiff argues that this Court must "look to the totality of the circumstances in determining which comparator evidence is sufficient at the summary judgment stage" given his allegations of a hostile work environment on account of his sex going back to at least 1987 . . . ." (Doc. # 22 at 15.) This is not a claim for relief based on a hostile work environment, but rather an argument as to the weight to be given to comparator evidence. He also alleges that he became the recipient of outrageous harassment on the basis of his sex from some of his co-workers from 1987 "to the present day". (*Id.* at 4). He gives one specific incident which consisted of June 1987 postings in the employee lunch room of photographs of naked transsexuals with his last name handwritten on one and an offensive comment relating to him handwritten on the other. (*Id.*) He alleges that he reported the postings of the photographs to company supervisors. However, he does not allege that Defendant failed to take any action to remedy it.  It is noted that that specific incident allegedly occurred in June 1987, eighteen years before this action was filed. He does not allege that he complained of a hostile work environment and that Defendant failed to take adequate action to remedy it as required by *Knabe v. The Boury Corp.,* 114 F.3d 407 (1997). In fact, the parties have stipulated that he has received copies of USS's Discriminatory Harassment Policy and attended trainings on it. Therefore he has not alleged a "hostile environment" claim under Title II.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986).

D.   **Discussion**

Plaintiff alleges that Defendant intentionally discriminated against him because of his sex in violation of

8

Title VII of the Civil Rights Act of 1964, codified at Title 42
U.S.C. § 2000e-2. (Doc. # 1 at ¶ 14.) Defendant moves for summary
judgment on the basis that Plaintiff can not establish a *prima
facie* case of discrimination under Title VII, and that Plaintiff
has failed to establish pretext. (Doc. # 20 at 8.) Title VII
reads in relevant part:

> It shall be an unlawful employment practice for an
> employer--
> (1) to fail or refuse to hire or to discharge any
> individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of
> such individual's race, color, religion, sex, or
> national origin; or
> (2) to limit, segregate, or classify his employees or
> applicants for employment in any way which would
> deprive or tend to deprive any individual of employment
> opportunities or otherwise adversely affect his status
> as an employee, because of such individual's race,
> color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (1991). "Practices that classify employees
in terms of religion, race, or sex tend to preserve traditional
assumptions about groups rather than thoughtful scrutiny of
individuals." *City of Los Angeles, Dept. of Water and Power v.
Manhart*, 435 U.S. 702, 709 (1978). Thus, under Title VII,
"Congress intended to strike at the entire spectrum of disparate
treatment of men and women resulting from sex stereotypes" by
forbidding employers from discriminating against individuals
because of their sex. *Manhart*, 435 U.S. at 707 n. 13. There are
two different theories that can support a Title VII violation:

First, a Title VII plaintiff can utilize the disparate

9

> impact theory of discrimination. A disparate impact
> violation is made out when an employer is shown to have
> used a specific employment practice, neutral on its
> face but causing a substantial adverse impact on a
> protected group, and which cannot be justified as
> serving a legitimate business goal of the employer. . .
> . No proof of intentional discrimination is necessary.
> . . .
>         Alternatively, the Title VII plaintiff can argue a
> disparate treatment theory of discrimination. . . . A
> disparate treatment violation is made out when an
> individual of a protected group is shown to have been
> singled out and treated less favorably than others
> similarly situated on the basis of an impermissible
> criterion under Title VII. . . . Unlike the disparate
> impact theory, proof of the employer's discriminatory
> motive is critical under this analysis.

*E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 346-47 (3d Cir.

1990)(citations omitted). In this case, Plaintiff alleges a

disparate treatment claim.

To defeat a motion for summary judgment, Plaintiff must

establish a *prima facie* case of discrimination under Title VII by

a preponderance of the evidence. *Texas Dep't of Community Affairs*

*v. Burdine*, 450 U.S. 248, 253 (1981). Once Plaintiff establishes

a *prima facie* case, the burden shifts to Defendant to produce

evidence of a legitimate, nondiscriminatory reason for his

termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973). If Defendant meets this burden, the presumption is

dispelled. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 142-43 (2000). Plaintiff then must be afforded the

opportunity to prove by a preponderance of the evidence that

Defendant's explanation was pretextual. *Reeves,* 530 U.S. at 143.

10

Further,

> [T]o defeat a summary judgment motion based on a
> defendant's proffer of a nondiscriminatory reason, a
> plaintiff who has made a prima facie showing of
> discrimination need only point to evidence establishing
> a reasonable inference that the employer's proffered
> explanation is unworthy of credence . . . . A
> plaintiff is not required to produce evidence which
> necessarily leads to the conclusion "that the employer
> did not act for the nondiscriminatory reasons."

*Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995),
*cert. denied*, 515 U.S. 1159 (1995) (citations omitted). The
plaintiff must provide sufficient evidence for a reasonable
factfinder either to reject the employer's nondiscriminatory
explanation for its decision, or to believe that an invidious
discriminatory reason was more likely than not a motivating cause
of the discharge of the employee.  *Reeves,* 530 U.S. at 143,
*citing Burdine*, 450 U.S. at 254. Although the burden of
production shifts between parties under the *McDonnell Douglas*
framework, the ultimate burden of persuasion remains with the
plaintiff. *Reeves,* 530 U.S. at 143.

### 1. **Prima Facie Case**

In order to establish a prima facie case of wrongful
termination based on sex, a plaintiff must show that he (1) was a
member of a protected class, (2) was qualified for the job, and
(3) was discharged, (4) in a manner that gives rise to an
inference of discrimination, such as being replaced by someone

outside of the protected class or that persons outside of the protected class were treated more favorably. See generally, *Texas Dep't Cmty. Affairs v. Burdine*, 450 U.S. at 253 n. 6, *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996); and *Waldron v. SL Industries, Inc.*, 56 F.3d 491, 493 (3d Cir. 1995). In this case, Defendant does not dispute that Plaintiff has established three of these elements. (Doc. # 20 at 8-9.) Defendant admits that Plaintiff is a member of a protected class (male), that he was qualified for his job, and that he was terminated. (*Id.*)  Defendant does, however, dispute that Plaintiff has established that his termination supports an inference of discrimination. (*Id.* at 9.)

Defendant argues that Plaintiff has not identified a similarly situated female who was treated more favorably than Plaintiff. (*Id.*) Defendant disputes that the women identified by Plaintiff as comparators acted with similar seriousness. (*Id.* at 9-18.) Defendant notes that they were supervised by different individuals, and, when relevant, had different discipline histories. (*Id.*) Thus, Defendant argues that the acts and individuals identified by Plaintiff can not support an inference of discrimination.

In making these arguments, Defendant exclusively cites non-controlling case law to establish standards for evaluating

12

whether a person is similarly situated. (See Doc. # 20.) Contrary to Defendant's argument that a fact specific finding is required to determine whether a comparator is similarly situated to Plaintiff, the Court of Appeals for the Third Circuit explained in *Simpson v. Kay Jewelers*, that the inquiry at the prima facie stage of the analysis is based upon a few generalized factors and Plaintiff's burden is not onerous. See 142 F.3d 639, 646 (3d Cir. 1997.) In fact, the court noted that evidence that one non-member of the protected class was allegedly treated more favorably than a member of the protected class may be enough at the prima facie case stage of the analysis. 142 F.3d at 646.

Here, Plaintiff has identified several non-members of the protected class, who were not disciplined for conduct that could have potentially lead to discipline. The cited conduct varied in disruptiveness from an individual filing a "false claim" against Plaintiff for feeling uncomfortable being around him to a verbal confrontation between co-workers where profanity was used. Specifically, Plaintiff offers evidence regarding three comparators. The first comparator Loretta Wright, hereinafter "Wright," filed an arguably false sexual harassment claim against Plaintiff, and had a confrontation with him over locker room space. (Doc. # 20, ex. A at 129-137.)[4] The second comparator,

---

[4] Wright did not complain that Brooks harassed her. Her complaint was that other men harassed her because of Brooks' gender reassignment. As an example, one (Hawes) asked her what

13

Kathy Marcenic, hereinafter "Marcenic," called Plaintiff a
"bitch" during a verbal confrontation in March 1995 and Plaintiff
threatened Marcenic during the confrontation. (*Id.* at 137-145.)
The third, Romona Williams, hereinafter "Williams," told
Plaintiff during a confrontation in the locker room that she
would "be glad when you get your dick and balls and get the fuck
out of here and take your friends with you." (*Id.* at 145-153.)
None of the above comparators were disciplined for the cited
conduct. (*Id.* at 129-154.) This evidence is sufficient to
establish an inference of discrimination because Plaintiff was
fired for calling another employee a "nigger" in violation of
Defendant's anti-harassment policy, and the cited conduct of the
comparators arguably violated the same policy. (Doc. # 20 ex. B.)
Again, Plaintiff's burden is not onerous at this stage, and
evidence that demonstrates an inference of discrimination in
connection to the adverse employment action is sufficient. Thus,
Plaintiff has established his prima facie case for disparate
treatment.

## 2. **Legitimate, Nondiscriminatory Reason**

Plaintiff having shown a prima facie case of discrimination,
the burden shifts to Defendant to produce evidence of a

---

Brooks looked like in the shower room. Therefore, Wright did not
charge Plaintiff with harassing her.

legitimate, nondiscriminatory reason for his termination. *McDonnell Douglas Corp.,* 411 U.S. at 802. If Defendant meets this burden, the presumption is dispelled. *Reeves*, 530 U.S. at 142-43. Here, Defendant asserts that Plaintiff was terminated because of his conduct on February 22, especially because he called another employee a "nigger" in violation of Defendant's anti-harassment policy. (See Step 2 grievance meeting minutes, Doc. # 20 Ex. 1 at ex F page 4.) Defendant's anti-harassment policy provides that the use of racial slurs is ground for discharge, and Plaintiff does not dispute that he used the term against the employee. (Doc. #20 ex A at ex 2, and Doc. # 20 ex A at page 88.)

Plaintiff's violation of Defendant's anti-harassment policy by the use of racial slurs is a legitimate and non-discriminatory reason for Plaintiff's discharge.

### 3. <u>Pretext</u>

After Defendant offers a legitimate reason for the employment action, under *McDonnell-Douglas*, the burden of producing evidence switches back to Plaintiff, who must demonstrate that the reason given by Defendant for his discharge was a pretext for a discriminatory motive. *Sempier,* 45 F.3d at 728. Plaintiff can meet this burden by presenting direct or circumstantial evidence of discrimination or falsity of the reason offered by Defendant. *Id.* Specifically,

15

"[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." . . . . If the plaintiff produces sufficient evidence of pretext, he need not produce additional evidence of discrimination beyond his prima facie case to proceed to trial. *Id.*

Pretext is not demonstrated by showing simply that the employer was mistaken. . . . Instead the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.

*Sempier*, 45 F.3d at 731 (internal citations omitted). It has been

further explained that to defeat a summary judgment motion:

The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."

*Olson v. GE Astrospace*, 101 F.3d 947, 951-952 (3d Cir. 1996).

Thus, in order to defeat a motion for summary judgment, Plaintiff

must identify evidence that establishes a reasonable inference

that Defendant's proffered non-discriminatory explanation "is

unworthy of credence." *Hugh v. Butler County Family YMCA*, 418

F.3d 265, 268 (3d Cir. 2005), quoting *Sorba v. Penn. Drilling

Co.*, 821 F.2d 200, 205 (3d Cir. 1987).

The particular criteria identified by the employer as the

reason for Plaintiff's termination was his use of a racial slur,

and his conduct on February 22. (See Doc. # 20 at ¶ 21.)

16

Plaintiff argues that Defendant did not actually rely upon the stated criteria for the adverse action because Karl Koscsis, department manager of labor relations for Defendant at the ET works, allegedly told him after his Step 3 meeting that he should not report to Defendant every time he overheard a racial slur being used. (Doc. # 22 at 19.) Plaintiff suggests that this statement, which Defendant's dispute, shows that Defendant does not seek to punish employees for using racial slurs, and thus his use of the racial slur was not the basis for Defendant's decision to terminate him. However, contrary to Plaintiff's assertion, this comment was made after Plaintiff had commented that African-American males used that word as "urban slang." Plaintiff's comment was clearly made in a derogatory context, not as "urban slang." Further, this statement was allegedly made several months after Plaintiff's termination and was made by a non-decision-maker. A stray remark by a non-decision maker is inadequate to support an inference of discrimination by the employer. See *Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1085 (3d Cir. 1995) Plaintiff has not demonstrated that Karl Koscsis was involved in the decision to terminate him. Indeed, it is undisputed that Pete Yanief made the determination that Plaintiff should be terminated. (Doc. # 19 at 8.) Therefore, this comment is insufficient alone to create an inference of discrimination.

Next, Plaintiff seeks to show that Defendant's failure to

discipline similarly situated female employees establishes that
Defendant's proffered reason was merely pretext for a
discriminatory motive. To support this element, Plaintiff cites
Defendant's failure to discipline the cited comparators for
incidents that could be deemed violations of Defendant's anti-
harassment policy.

Plaintiff's burden at the pretext stage of the analysis is
to show with a level of specificity that the comparators were in
fact treated more favorably. *Simpson*, 142 F.3d at 646. When
establishing pretext, Plaintiff's claim can not rest on the
favorable treatment of a single non-class member, and Plaintiff
can not pick and choose a person perceived to be a valid
comparator while ignoring comparators who were treated the same
or less favorably than him. *Id.* at 646-47. Finally, when
evaluating comparators, the focus is on the particular criteria
identified by the employer as the reason for the adverse action.
*Id.* at 647.

Here, Plaintiff has failed to demonstrate that similarly
situated employees are treated more favorably by Defendant. He
has failed to identify any circumstance where a similarly
situated female employees' use of a racial slur did not result in
discipline. In fact, Plaintiff can not recall whether the first
woman, Wright, actually used any profanity, and he agreed that
she did not use racial slurs. (Doc. # 20, Ex. A at 132.) Further,

18

as noted above, she did not claim that he harassed her. She claimed that because of him other men harassed her.  The second woman, Marcenic, used the term "bitch" in reference to Plaintiff during a verbal confrontation, but did not use racial slurs. (Doc. # 20, ex A at 141.)  Further, in this exchange, Plaintiff admittedly used profanity against the woman and threatened her with physical violence. (*Id*.) The final woman, Williams, told Plaintiff in crass terms that she was looking forward to the completion of his gender reassignment so that he would no longer be using the women's locker room. She did not use racial slurs. (*Id*. at 147.) This exchange was offensive, and it would seem that Williams could have been subjected to discipline under the same anti-harassment policy that was the basis for Plaintiff's discharge. However, she did not have the same decision-maker as he did - - Yanief. Further, in *Simpson*, the Court of Appeals noted that while evidence that one non-member of the protected class was allegedly treated more favorably than a member of the protected class may be enough at the prima facie case stage of the analysis, this showing is not enough to demonstrate pretext. 142 F.3d at 646.

Further, Plaintiff has not cited evidence that suggests that women who work for Defendant are given preferential treatment. Plaintiff (a male) did not demonstrate that he received greater discipline than the alleged comparators for his participation in

the cited exchanges. The only circumstance identified where Plaintiff was disciplined and the other employee was not, was an exchange with another man. Thus, even taking Plaintiff's allegations regarding the conduct of Hawes as fact, this exchange does not show discrimination against males, because Hawes, a male, was not disciplined while Plaintiff (a male) was. Plaintiff has not identified any evidence that men are subject to stricter standards of discipline than females at Defendant's workplace. Plaintiff has not demonstrated that females using racial slurs would receive better treatment than he did, because of their sex.

Therefore, Plaintiff has failed to offer comparator evidence that would support an inference of discrimination based upon sex. Thus, Plaintiff has failed to demonstrate that Defendant's legitimate, non-discriminatory reason given for his discharge was pretextual for discrimination based upon sex.


## III. <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from

the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

 /s/ Ila Jeanne Sensenich
ILA JEANNE SENSENICH
United States Magistrate Judge


Dated:   July 26, 2006


cc:  The Honorable Gary L. Lancaster
     United States District Judge

     All parties electronically